E. MARTIN ESTRADA
United States Attorney
CAMERON L. SCHROEDER
Assistant United States Attorney
Chief, National Security Division
JENNA W. LONG (Cal. Bar No. 332192)
Assistant United States Attorney
Terrorism and Export Crimes Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-8692
     Facsimile:  (213) 894-2927
     Email: jenna.long@usdoj.gov

Attorneys for Applicant
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| IN RE: CELLULAR TELEPHONE | No.  2:23-MJ-4982 |
|---|---|
| | GOVERNMENT'S *EX PARTE* APPLICATION FOR A WARRANT AUTHORIZING THE DISCLOSURE OF HISTORICAL AND PROSPECTIVE CELL SITE AND PHONE LOCATION INFORMATION, AND REQUEST TO SEAL; AFFIDAVIT OF ANDREW SCHALIN |
| | **(UNDER SEAL)** |

    The United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, hereby applies for a warrant requiring cellular telephone service provider(s) to furnish the Federal Bureau of Investigation (the "Investigating Agency") with information relating to the following cellular telephone: 909-346-7297, a cellular telephone issued by T-Mobile US, Inc. (the "Carrier"), with International Mobile Equipment Identity ("IMEI") 355574111987579, International Mobile Subscriber Identity ("IMSI") 310260048504843, subscribed to Dicmar Joaquin at 991 West Blaine Street, Riverside,

California 92507 and believed to be used by Eduardo Vicente Pelayo Rodriguez (the "**Subject Telephone**").

Specifically, authorization is sought to obtain historical location information related to the use of the **Subject Telephone** from December 4, 2022 through September 28, 2023, and prospective location information related to the use of the **Subject Telephone** for a period of 45 days from the date of this application, that is, until November 12, 2023 including: (1) information reflecting the location of cellular towers (cell-site and sector/face) interacting with the **Subject Telephone**, including call detail, text, and data information ("Cell-site Information"), and (2) data collected by the Carrier reflecting the physical location of the **Subject Telephone**, including E-911 Phase II data, latitude and longitude data, and/or network timing information, including Sprint's Per Call Measurement Data, Verizon's Real Time Tool, AT&T's Network Event Location System and T-Mobile's True Call data, and all other records containing timing advance measurements and distance-to-tower measurements for all technologies (CDMA2000, GSM, UMTS, LTE, 5G-NR) (collectively, "Phone Location Information"), along with any other associated data that was collected by the Carrier, but not including the contents of any communication.

The application is made in connection with an investigation of offenses committed by Eduardo Vicente Pelayo Rodriguez and potentially unknown others (the "Target Subject"), specifically, violations of Title 18, United States Code, Sections 875 (Interstate Threats to Injure) and 1038(a) (False Information and Hoaxes) (the "Target Offenses"), and is based upon the attached agent affidavit. There is probable cause to believe that federal crimes have been

committed and that the information likely to be received concerning the approximate location of the **Subject Telephone** will constitute or yield evidence of those crimes.

The information sought by this application, which is acquired in the first instance by the Carrier[s], is sought based on 18 U.S.C. § 2701 et seq. (the "Stored Communications Act").  The Stored Communications Act provides:

> A governmental entity may require a provider of electronic communication service . . . to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only[1] when the governmental entity --
>
> (A) obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure . . . by a court of competent jurisdiction[.][2]

18 U.S.C. § 2703(c)(1); see also Carpenter v. United States, 138 S.Ct. 2206 (2018) (holding that a warrant is required to obtain seven or more days' worth of historical cell-site information).[3]

---

[1] This section also provides other methods to compel disclosure, including via subpoena or court order.  However, the government in this case is proceeding under the highest threshold, that is, obtaining a warrant as described in § 2703(c)(1)(A).

[2] This Court is a "court of competent jurisdiction" because it is a "district court of the United States (including a magistrate judge of such a court) . . . that . . . has jurisdiction over the offense being investigated."  18 U.S.C. § 2711(3)(A)(i).  This is true even if the subject of the investigation, and/or his or her phone, is in another district.  See, e.g., United States v. Ackies, 918 F.3d 190, 201-02 (1st Cir. 2019) (finding in the context of a warrant issued in one district for location information regarding phones physically located in another district that § 2703's plain text and structure, supported further by legislative history and Congressional intent, make clear that § 2703 permits searches not governed by Rule 41's geographic limitations).

[3] The definition of terms in the Stored Communications Act makes clear that the "record or other information" that a court may order a provider to disclose to the government under Section 2703(c)(1)(A) includes both cell site and other location information.  First, the Stored Communications Act expressly adopts the definition of statutory terms set forth in 18 U.S.C. § 2510.  See 18 U.S.C. § 2711

Prospective information is also sought based on the authority of 18 U.S.C. § 3121 et seq. (the "Pen Register Statute").[4]  The government therefore also complies with the provisions of that statute, including by providing the required certification by the attorney for the government at the end of this application. Pursuant to the Pen Register Statute, upon an application made under 18 U.S.C. § 3122(a)(1) a court "shall enter an <u>ex parte</u> order authorizing the installation and use of a pen register or trap and trace device anywhere within the United States, if the court finds that the attorney for the Government has certified to the court that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation."  18 U.S.C. § 3123(a)(1).[5]

---

("As used in this chapter. . . (1) the terms defined in section 2510 of this title have, respectively, the definitions given such terms in that section").  Thus, the term "provider of electronic communication service" used in Section 2703(c) covers cellular telephone service providers, because 18 U.S.C. § 2510(15) defines "electronic communications service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications."  18 U.S.C. § 2510(15).  Further, cell site and Phone Location Information is "a record or other information pertaining to a subscriber to or customer of" an electronic communications service – another term used in Section 2703(c) – because that information is collected and stored by cellular telephone service providers.

    [4] 18 U.S.C. § 3127(3) defines "pen register" as "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, provided, however, that such information shall not include the contents of any communication."  A "trap and trace" device is similarly defined for any device or process which captures incoming data.  <u>See</u> 18 U.S.C. § 3127(4).

    [5] While 47 U.S.C. § 1002, which is part of the Communications Assistance for Law Enforcement Act of 1994 ("CALEA"), would preclude seeking physical location information based on the Pen Register Statute alone, the Stored Communications Act provides the requisite additional authority for this Court to authorize the production by a Carrier of cell-site information to the government.

Cellular telephone companies routinely create and maintain, in the regular course of their business, records of information concerning their customers' usage of particular cell towers.  For each communication a customer makes or receives, these records typically include (1) the date and time of the communication; (2) the telephone numbers involved; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication.  The records may also, but do not always, specify a particular sector of a cell tower used to transmit a communication.  Cell-site Information is useful to law enforcement because of the information it provides about the general location of a cell phone when a communication is made.

Cellular telephone companies also routinely create and maintain, in the regular course of their business, records of information concerning their customers' usage that includes data reflecting the physical location of the phones themselves.  Cellular telephone companies are required by the Federal Communications Commission to be able to provide latitude, longitude, and altitude information for telephones that call 911.  This information is referred to as E-911 Phase II information.  Cellular providers have been required to provide some form of E-911 data since approximately 1999, before the rollout of 3G cellular networks in the United States.  Historically, cellular providers relied on Global Positioning System ("GPS") chips in the phone handsets themselves for the location information.  Cellular providers could, in response

to a warrant, query a phone on their network about its location and receive GPS information from the handset.

Cellular providers are now able to determine the latitude, longitude, and altitude of phones connected to their networks based on routine signaling information between the phones and the network towers.  No query to the phone's GPS chip is necessary for the provider to collect this location information.  Indeed, that information is collected simply by the fact of the phone being connected to the network and is a necessary part of the phone's operation on the cellular provider's network.  This data is collected in the ordinary course of the provider's business.  Cellular providers use a variety of terms to refer to this network timing advance or distance-to-tower network information, including Sprint's Per Call Measurement Data, Verizon's Real Time Tool, AT&T's Network Event Location System, and T-Mobile's True Call.  Carriers are therefore able to provide this data at regular intervals to law enforcement for both historical and prospective service.

Pursuant to 18 U.S.C. § 2705(b), this application requests that the Court enter an order commanding the Carrier not to notify any person, including the subscriber(s) of the **Subject Telephone**, of the existence of the warrant until further order of the Court, until written notice is provided by the United States Attorney's Office that nondisclosure is no longer required, or until one year from the date the Carrier complies with the warrant or such later date as may be set by the Court upon application for an extension by the United States, for the reasons outlined in the attached agent affidavit.

This application also seeks an order that (1) authorizes the disclosure of not only information with respect to the **Subject**

**Telephone,** but also with respect to any changed telephone number(s) assigned to an instrument bearing the same ESN, IMSI, or IMEI (hereinafter "unique identifying number") as the **Subject Telephone,** or any changed unique identifying number subsequently assigned to the same telephone number as the **Subject Telephone,** or any additional changed telephone number(s) and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to the same wireless telephone account number as the **Subject Telephone** within the period of disclosure authorized by the warrant; and (2) orders the Investigating Agency to reimburse the applicable cellular telephone service provider for its reasonable expenses directly incurred in providing the requested information and any related technical assistance.

//

//

Finally, this application requests that it, the proposed warrant that has been concurrently lodged, and the return to the warrant be sealed by the Court until such time as the Court directs otherwise or until the government determines that these materials are subject to its discovery obligations in connection with criminal proceedings, at which time they may be produced to defense counsel. Allowing disclosure to the public at large would likely jeopardize the ongoing investigation for the reasons outlined in the attached agent affidavit.

Dated: September 28, 2023          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

CAMERON L. SCHROEDER
Assistant United States Attorney
Chief, National Security Division

_____
JENNA W. LONG
Assistant United States Attorney

Attorneys for Applicant
UNITED STATES OF AMERICA

CERTIFICATION

In support of this application, and pursuant to 18 U.S.C. § 3122, I state that I, Jenna W. Long, am an "attorney for the Government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.  I certify that the information likely to be obtained from the requested warrant is relevant to an ongoing criminal investigation being conducted by the Investigating Agency of the Target Subject for violations of the Target Offenses.

I declare under penalty of perjury under the laws of the United States of America that the foregoing paragraph is true and correct.

September 28, 2023
DATE

JENNA W. LONG
Assistant United States Attorney
Terrorism and Export Crimes
Section

### AFFIDAVIT

I, Andrew Schalin, being duly sworn, declare and state as follows:

### I.   INTRODUCTION

1.   I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since January 2020. I am currently assigned to the Los Angeles Field Office, Riverside Resident Agency, Domestic Terrorism Squad, as part of the Inland Empire Joint Terrorism Task Force.  In this capacity, I investigate, among other things, criminal violations concerning domestic terrorism, as well as other violations of Title 18 of the United States Code.  I have received specialized training in conducting criminal and counter-terrorism investigations and have consulted with my colleagues who have many years of experience investigating criminal and terrorism crimes.  Specifically, I have received 19 weeks (approximately 760 hours) of instruction in the fundamentals of law, ethics, behavioral science, interviewing, report writing, firearms, surveillance, defensive tactics, and case management at the FBI Academy in Quantico, Virginia.  I have received additional training in evidence collection, electronic devices and data, criminal statutes, and, specifically, criminal threats.  As a Special Agent, I have personally been involved in investigations involving domestic terrorism, international terrorism, criminal threats, financial crime, fraud, fugitive apprehension, and investigations that have involved court-authorized searches of physical locations, as well as electronic devices and data retrieved from them, and the interception of wire and electronic communications.

## II. PURPOSE OF AFFIDAVIT

2.   This affidavit is made in support of an application for a warrant authorizing the disclosure of Cell-site Information and Phone Location Information (as defined in the application), including historical information from December 4, 2022 through September 28, 2023, and prospective information for a period of 45 days from the date of this application, that is, November 12, 2023, for  the following cellular telephone: 909-346-7297, a cellular telephone issued by T-Mobile US, Inc. (the "Carrier"), with International Mobile Equipment Identity ("IMEI") 355574111987579, International Mobile Subscriber Identity ("IMSI") 310260048504843, subscribed to Dicmar Joaquin at 991 West Blaine Street,[1] Riverside, California 92507 and believed to be used by Eduardo Vicente Pelayo Rodriguez (the "**Subject Telephone**").

3.   As described more fully below, I respectfully submit there is probable cause to believe that Cell-site Information and Phone Location Information likely to be received concerning the approximate location of the **Subject Telephone** will constitute or yield evidence of violations of Title 18, United States Code, Sections 875 (Interstate Threats to Injure) and 1038(a) (False Information and Hoaxes) (the "Target Offenses"), that were committed by Eduardo Vicente Pelayo Rodriguez and potentially unknown others (the "Target Subject").

---

[1] On approximately April 26, 2023, the Investigating Agency obtained records from T-Mobile US, Inc. related to the **Subject Telephone**.  At the time the records were produced this was the subscription address.  I have reason to believe, as further explained in paragraph 587 that the subscriber address may have since changed from apartment 43 to apartment 99 at the same street address, as such from the order I have omitted the apartment number.

4.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of, or investigation into, this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only, and all dates and times are on or about those indicated.

III. <u>STATEMENT OF PROBABLE CAUSE</u>

5.    Between January 18, 2023 and February 8, 2023, 15 threatening phone calls were made to several locations, namely an international airport, eight schools, and suicide or crisis hotlines.  Nearly all of the threatening calls were made by a (presumed) male voice who identified themselves as "Daniel Montes" and alleged he was going to be the next mass shooter of 2023, on his way to conduct a mass shooting, that he had planted bombs at the location, or that the caller was contemplating suicide.  In response to several of the threatening calls, various police departments responded and had to confirm there was no active threat or danger to the public.

6.    As described further below, the investigation has led me to believe these calls were not made by Daniel Montes and instead were made by Eduardo Vicente Pelayo Rodriguez ("RODRIGUEZ") as "swatting"[2] calls targeting Daniel Montes.

_____

[2] Based on my training and experience, I know the term "swatting" to refer to a tactic of harassment where an individual

4

7.    Almost all of the calls were made by seven phone numbers associated with a Voice over Internet Protocol service, TextNow, Inc. ("TextNow").  Each of these seven phone numbers were associated with TextNow accounts registered using seven different Google email accounts.  At least six of the seven email accounts were accessed by the same mobile device, which is associated with the **Subject Telephone** subscribed to the stepfather of the Target Subject at the residence they are believed to have shared at the time.  It is also the contact phone number for the Target Subject's credit card.

A.    **15 Threatening Phone Calls Made in January and February 2023**

8.    On January 18, 2023, at approximately 5:59 p.m. Pacific Standard Time ("PST"), according to an employee of Didi Hirsch Mental Health Services in Los Angeles County, California, the Didi Hirsch Suicide Prevention Center received a call from phone number 909-602-0424 (the "0424 Number") (hereinafter "Call 1").  According to the employee who took the call, the caller gave their name as "Daniel," and sounded male.  The caller said his daughter was raped by his best friend who he served in the Navy with.  The employee believed the caller sounded intoxicated, but the caller denied it and refused to answer questions regarding suicide or substance abuse.  The caller then hung up.  This was not reported to law enforcement.

---

calls emergency services with a hoax, falsely identifying another individual in an attempt to have emergency or police services respond to this other individual's location.  I know this practice has been described on social media and in the press as resulting in the deaths and crises of the individuals that are subject of the swatting.

9.   On January 22, 2023, at approximately 6:51 p.m. PST, according to an employee of Didi Hirsch Mental Health Services, the Didi Hirsch Suicide Prevention Center received a call from phone number 424-538-6294 (the "6294 Number") (hereinafter "Call 2").  The employee who answered the call said the caller sounded male, identified himself as "Daniel Montes," and said he was 35 years old, and had drunk Clorox (which I understand to refer to a brand of bleach) and alcohol.  The caller gave their address as Park Hill Apartments in Riverside, apartment 115.  Park Hill Apartments is located at 991 West Blaine Street in Riverside, California (the same apartment complex where the Target Subject resides).  The suicide prevention center contacted the Riverside Police Department to report the information the caller had given.  Riverside Police Department officers went to the address, but there was no answer at apartment 115.  According to neighbors the officers spoke to, the apartment was vacant.  A police dispatcher called the 6294 Number, an individual who sounded male answered and immediately hung up when the dispatcher identified themselves.  When police called the 6294 Number again, there was no answer.

10.   On January 23, 2023, at approximately 1:34 a.m. PST, according to records provided by the Veterans Affairs Veterans Crisis Line, the Veterans Affairs Veterans Crisis Line headquartered in Canandaigua, New York, received a call from the 6294 Number (hereinafter "Call 3").  The 6294 Number is the same phone number that made Call 2 to the Didi Hirsch Suicide Prevention Center the day before.  I have listened to a recording of Call 3.  The caller, who sounded Hispanic (based on an accent) and male in my opinion, identified himself as "Daniel Montes" and said he was a Navy

veteran.  He said his daughters had been raped at a party and he wanted to kill himself.  He explained he had "PTSD" (which I understand to refer to post-traumatic stress disorder) and was holding a gun.  The caller hung-up after saying he was drinking to kill himself.  The Crisis Line contacted the Riverside Police Department to report the call.  According to police records, Riverside Police Department used the California Law Enforcement Communications System ("CLETS") to look-up firearms registered to "Daniel Montes."  The Riverside Police Department contacted the utilities account holder for the listed address of the firearms purchaser, which, based on my knowledge of the investigation, is unrelated to the individual referred to as Daniel Montes, further described _infra_ in Section III.F.

11.  On January 23, 2023, at approximately 5:49 p.m. PST, according to an employee of Didi Hirsch Mental Health Services, the Didi Hirsch Suicide Prevention Center received a call from phone number 909-245-7135 (the "7135 Number") (hereinafter "Call 4"). According to the employee who answered Call 4 (the same employee who answered Call 1), the caller sounded male and due to the similarity in calls sounded like the same caller.  The caller said his name was "Daniel," was in the reserves, and had been diagnosed with "PTSD" (which I understand to refer to post-traumatic stress disorder). The caller said he wanted to kill himself because he couldn't visit his daughters due to a court order.  The caller said he had gun next to him, as well as a kitchen knife, and wanted to cut his vein. Before hanging up, the caller started grunting and said he cut his vein.  The employee called the 7135 Number back twice, but there was no answer.  This was not reported to law enforcement.

12.  On January 23, 2023, at approximately 6:16 p.m. PST,
according to records provided by the Veterans Affairs Veterans
Crisis Line, they received a call from the 7135 Number (hereinafter
"Call 5"). The 7135 Number is the same phone number that made Call 4
to Didi Hirsch Mental Health Services less than an hour earlier.  I
have listened to a recording of Call 5.  The caller, who sounded
Hispanic (based on an accent) and male in my opinion, said he wanted
to kill himself and that his daughters were taken away by the
courts.  The caller identified himself as "Daniel Montes" and said
he lived in apartment 115 at the Park Hill Apartments in Riverside,
California, and said he was in the Navy.  The caller said he had a
gun to his forehead and then said he cut his veins with a knife.
The caller ended the call after groaning for several seconds.  The
Crisis Line contacted the Riverside Police Department to report the
call, who referred them to the Riverside County Sheriff's
Department.  According to police records, the Riverside County
Sheriff's Department called the 7135 Number three times, but there
was no answer, and they were unable to obtain the location data for
the phone number.

13.  On February 6, 2023, at approximately 11:48 p.m. PST on
February 5, 2023, according to records provided by the Veterans
Affairs Veterans Crisis Line, they received a call from phone number
909-550-4242 (the "4242 Number") (hereinafter "Call 6").  I have
listened to a recording of the call.  The caller, who sounded
Hispanic (based on an accent) and male in my opinion, said he raped
his daughter and she was currently tied up.  He said he wanted to
kill himself and his daughters.  The caller identified himself as
"Daniel Montes," said that he was a Navy veteran, and that he lived

in apartment 109 in the city of Riverside (without giving a street address).  The caller hung-up after saying he was going to shoot his daughters.  The Crisis Line contacted the Riverside Police Department to report the call.  According to police records, the Veterans Crisis Line gave the Riverside Police Department an address in the city of Riverside, which the Veterans Crisis Line found online.  According to a Riverside Police Department officer that went to that address overnight, they spoke to a male and a female. The male gave the name "Daniel Montes,"[3] and said he did not call the crisis line.  The officer did not observe anything of concern at the address.

14.  On February 6, 2023, at approximately 1:48 p.m. PST, according to an employee of Highland Elementary School in Riverside, California, the school received a call from phone number 909-679-6216 (the "6216 Number") (hereinafter "Call 7").  According to the school employee, the caller, who sounded male with a Hispanic accent, said he was the next mass shooter of 2023 and gave his name as "Daniel Montes."  Then the caller hung-up.  After the school contacted law enforcement, the Riverside Police Department responded.  Riverside Police Department dispatch contacted the telephone provider (Telnyx LLC, discussed further below in paragraph 25), and were told the phone number had not made any calls in 48 hours and they were unable to obtain the location data for the number due to the nature of the service.  Based on the above, law enforcement believed the number may have been "spoofed" (I understand spoofing to be when a caller intentionally causes the

---

[3] This individual is D. Montes as described _infra_ in Section F at his known residence.

information transmitted to the caller identification function show a different number than is being used in order to disguise their identity).  Riverside Police Department searched the 6216 Number in law enforcement databases, identified a Hemet, California address but when Hemet Police Department spoke to the residents, they denied any connection to the call or the phone number.  According to records provided by TextNow (discussed further below in paragraph 25), Highland Elementary School also received a call on January 18, 2023, at approximately 2:45 p.m. PST, from the 0424 Number--the same number that made Call 1--but, according to an employee of Highland Elementary, they did not receive any threatening calls on January 18, 2023.

15.   On February 8, 2023, at approximately 10:34 a.m. PST, according to an employee of Highgrove Elementary School in Riverside County, California, the school received a call from phone number 909-324-2609 (the "2609 Number") (hereinafter "Call 8").  According to the school employee, the caller sounded male, identified himself as "Daniel Montes,"[4] and said he was going to be the next mass shooter of 2023.  The caller said this three times and hung-up.  As a result of this call, the school was placed on lockdown and school staff called 9-1-1.  Riverside County Sheriff's Department attempted to obtain location data from TextNow (the provider of the 2609 Number, described further in paragraphs 26 and 31), but due to the nature of the service location data is not available.  The sheriff's

---

[4] Initially, the employee said the caller identified himself as "Daniel Montes."  When the employee was interviewed by the FBI at a later date, the employee said the caller identified himself as either David or Daniel.

department also conducted a search of the area around the school for anyone that could be the caller but did not find anyone.

16.   On February 8, 2023, at approximately 10:52 a.m. PST, according to an employee of Emerson Elementary School in Riverside County, California, the school received a call from the 2609 Number (hereinafter "Call 9").   The 2609 Number is the same phone number that made Call 8 less than 20 minutes earlier.   According to the school employee, the caller sounded male[5] and said there was going to be a mass shooting and that the employee would die.   The caller did not identify himself.   As a result of this call, the school was placed on lockdown and called 9-1-1.   When the Riverside Police Department arrived at the school, they conducted a search of the area for anyone that could be the caller but did not find anyone. While police officers were at the school, a similar call was received at George Washington Elementary School (which is described below in paragraph 18).   Because of the report of multiple similar calls in the surrounding area close in time, the Riverside Police Department concluded this was a hoax.   Following this incident, the school took several additional safety measures including conducting a debrief with the school staff, notifying the community, reviewing the lockdown protocol, obtaining funding for window screening to obscure seeing into classrooms, conducting lockdown drills, and no longer publicizing school events on social media.

17.   On February 8, 2023, at approximately 11:15 a.m. PST, according to an employee of Grand Terrace Elementary School in San

---

[5] In a later interview conducted by the FBI, the employee recalled that they believed the male caller sounded African American.

Bernardino County, California, the school received a call from phone number 951-450-2504 (the "2504 Number") (hereinafter "Call 10"). According to the employee, the caller, who sounded male, with a Hispanic accent, identified himself as "Daniel Montes."  The caller said he was on his way to shoot up the school and would be there in 10 minutes.  The caller also said he was the new mass shooter of 2023, and they were going to pay.  The employee who took the call hung-up and called 9-1-1.  When the San Bernardino County Sheriff's Department arrived at the school, they conducted a search of the area for anyone that could be the caller but did not find anyone.

18.  On February 8, 2023, at approximately 11:18 a.m. PST, according to an employee of George Washington Elementary School in Riverside County, California, the school received a call from the 2504 Number (hereinafter "Call 11").  The 2504 Number is the same phone number that made Call 10 approximately one minute earlier. According to the school employee, the caller, who sounded male, identified himself as "Daniel Montes" (or a similar name)[6] and said he had planted a bomb at the school.  The school was placed on lockdown and the incident was reported to law enforcement.  When the Riverside Police Department arrived at the school, officers cleared the school of any threats.  Riverside Police Department identified through database checks that the phone number was registered to TextNow.  Officers contacted TextNow and were given, among other subscriber information, two IP addresses.  One of the IP addresses

---

[6] Initially, to the Riverside Police Department the employee reported that the caller identified himself as "Daniel Montes." However, during an interview conducted by the FBI on a later date, the employee said the caller said his name was "David Montes." According to the employee, she could not recall the exact name the subject gave.

belonged to Spectrum.  Officers contacted Spectrum, which Charter Communications, Inc. manages records for, and were given subscriber information.  Based on records I have reviewed, as discussed in paragraph 32, I believe one IP address to have been the IP address used to register the phone number approximately three months earlier, but at the time the call was made this IP address was registered to new address.  It is my understanding from Riverside police officers that they responded to an address in Jurupa Valley, California (the subscriber of the IP address at the time of the call, not at the time of the account registration) and attempted to contact the subscriber but did not find any connection to the call. Following the incident, the school took additional safety measures including requesting extra-patrol from the school resource officer and conducting a review of lockdown procedures with the staff.

19.  On February 8, 2023, at approximately 11:32 a.m. PST, according to an employee of John W. North High School in Riverside County, California made to Riverside Police Department, the school received a call from the 2609 Number (hereinafter "Call 12").  The 2609 Number is the same phone number that made Calls 8 and 9 less than an hour earlier.  According to the employee, the caller who sounded male, and possibly intoxicated because of slow, slurred speech, said his gun was missing and his son "Daniel Montes" had bullets.  The employee who answered the call put the caller on hold and when she returned, the call was disconnected.  The employee called the School Resource Officer to report the call to law enforcement.  Because of the ongoing investigation related to Call 11 (which occurred less than 20 minutes prior) and no direct threat was made in Call 12, officers did not respond to the school.

According to records provided by TextNow (discussed further in paragraph 25), John W. North High School also received a call on January 18, 2023, at approximately 2:42 p.m. PST, from the 0424 Number--which made Call 1--but, according to the school, they did not receive any threatening calls on January 18, 2023.

20.   On February 8, 2023, at approximately 11:39 a.m. PST, according to the report of an employee of Grand Terrace High School in San Bernardino County, California made to the San Bernardino County Sheriff's Department, the school received a voicemail from the 2609 Number (hereinafter "Call 13").  The 2609 Number is the same phone number that made Calls 8, 9, and 12 less than an hour earlier.  I have listened to a recording of the call.  The caller, who sounded Hispanic (based on an accent) and male in my opinion, said "my name is Daniel Montes Serrano and I'm the next school mass shooter 2023.  You're all gonna die."  According to the school employee's report, the school was placed on lockdown and the school resource officer called the San Bernardino County Sheriff's Department.  When the San Bernardino County Sheriff's Department arrived at the school, they conducted a security sweep of the interior of the school and the surrounding area for anyone that could be the caller but did not find anyone.  Following the incident, the Sheriff's Department conducted extra patrols around the school, and the school conducted additional lockdown drills.

21.   On February 8, 2023, at approximately 7:10 p.m. PST, according to the report of an employee of Sandy Hook Elementary School[7] in Newton, Connecticut made to the Newtown Police Department,

---

[7] I know this to be the same school that was the site of a mass shooting event in 2012, which was highly publicized nationally.

14

the school received a call from phone number 951-379-4363 (the "4363 Number") (hereinafter, "Call 14").  I have listened to the voicemail recording.  The caller, who sounded Hispanic (based on an accent) and male in my opinion, identified himself as "Daniel Serrano Montes," and stated he lived in Riverside, California and he was the next mass shooter of 2023.  He said, "all the first graders and kindergarteners are gonna die tomorrow.  I put bombs."  After, the principal of the school listened to the voicemail on February 9, 2023, he contacted a Newtown Police Sergeant.  The school staff reviewed the school's surveillance cameras from the night before but did not see anything suspicious on the footage.  Newton Police Department posted an officer at the school as a precautionary measure.

22.  On February 8, 2023, at approximately 7:17 p.m. PST, according to the Nashville Airport Authority, the Nashville International Airport in Nashville, Tennessee received a call from the 4363 Number (hereinafter "Call 15").  The 4363 Number is the same phone number than made Call 14 to Sandy Hook Elementary School less than 10 minutes earlier.  I have listened to a recording of the call.  The caller, who sounded Hispanic (based on an accent) and male in my opinion, identified himself as "Daniel Montes Serrano,"[8] said he had just come back to California, and that he had planted a bomb at the airport and on an airplane.  When asked, the caller said he was in Riverside, California and was in the Navy.  The caller said it was payback, said "Allahu Akbar," and added it was for ISIS (which I understand to refer to the Islamic State of Iraq and Syria,

---

[8] The caller identified himself as "Daniel Montes" a second time and spelled it.

a designated foreign terrorist organization).  The caller said, "one hour boom," and then hung-up.  According to the FBI's Memphis Field Office, as a result of this call Nashville Airport began searches and protective sweeps of aircraft, people, and areas surrounding the airport.

23.  Of the six recordings (Calls 3, 5, 6, 13, 14, and 15) that I have listened to, in my opinion, the callers of these six calls all sound very similar and I believe they could be the same male.

**B.    Seven of the Eight Phone Numbers Used in the Threatening Calls Were Made by TextNow Accounts**

24.  According to database checks, seven of the above-mentioned eight phone numbers that placed threatening calls are associated with TextNow, specifically the 0424, 6294, 7135, 4242, 2609, 2504, and 4363 numbers.

25.  The eighth phone number that placed a threatening call, the 6216 Number (which placed Call 7), according to FBI database checks is associated with Telnyx LLC, a telecommunications and Voice over Internet Protocol service (described below) provider. According to Riverside Police Department, on February 6, 2023, Telnyx informed them that the 6216 Number was issued to Tiger Liu/Dingtone Communications Limited, address RM 2013 Futura Plaza 111 How Ming Street in Kwun Tong, Hong Kong.  However, according to records I received from Telnyx LLC on August 14, 2023, which I have reviewed, the 6216 Number was issued to Dan Aquila/Peerly Inc., address 2232 Dell Range Road in Cheyenne, Wyoming.  Of note, during my investigation, I identified that on January 18, 2023, the 0424 Number (a TextNow number discussed below in paragraph 27) called

Highland Elementary School (the recipient of Call 7) and John W.
North High School (the recipient of Call 12).

26.  Based on my training and experience, as well as reviewing
publicly available information about TextNow, I understand TextNow
to be a "Voice over Internet Protocol" (also referred to as "VoIP")
service.  Voice over Internet Protocol (VoIP) is a technology that
allows you to make voice calls using a broadband Internet connection
instead of a regular (or analog) phone line.  Specifically, TextNow
is a VoIP service that allows users to text and call any number in
Canada and the United States by using WiFi, as opposed to using a
traditional telephone network.  Additionally, users are able to
purchase credits to make international long-distance calls.  TextNow
provides the user with a phone number which can be used on any
smartphone, tablet, or desktop computer with an internet connection
(TextNow also provides SIM Cards if users want to use the service
without internet connection by connecting to a cellular network).
This means a single user can create multiple accounts, which have
different phone numbers associated with them.  According to
information provided by TextNow, after an account is assigned a
phone number, a user can choose to switch that number every 15 days.[9]
The TextNow application can be used on multiple devices under the
same login at the same time.  Because of the nature of a VoIP
service, no location data is available associated with the phone
numbers.

---

[9] A phone number may also be unassigned to an account (and
therefore possibly reassigned to a new account) if unused for some
period of time.

17

27.   According to records provided by TextNow, the 0424 Number (which made Call 1 and called Highland Elementary and John W. North High Schools on January 18, 2023) was assigned to a TextNow account with username "edwardend91" from January 11, 2023 02:51:58 UTC to February 19, 2023 05:37:57 UTC.   The account with username edwardend91 was registered using email address edwardend91@gmail.com on July 7, 2021 at 01:09:45 UTC.   The registration IP address was 172.58.29.237.   The name listed on the account was "ÃƒÂ§ÃƒÂ¯."   Further, according to the records provided by TextNow, this account has "Google Ad Identification"[10] Number Android OS: ae4ac46f-fd58-441a-a822-cadb9e5e7112 (as well as two additional Google Ad Identification Numbers).

28.   According to records provided by TextNow, the 6294 Number (which made Calls 2 and 3) was assigned to a TextNow account with username "kastip275" from January 23, 2023 02:47:58 UTC to January 31, 2023 10:32:45 UTC.   The account with username kastip275 was registered using email address kastip275@gmail.com on January 23, 2023 at 02:47:43 UTC.   The registration IP address was 35.149.22.120.   The name listed on the account was "Kas Tip." Further, according to the records provided by TextNow, this account has Google Ad Identification Number Android OS: f95a155a-651d-4f6c-ae16-b5a0ba83a287.

---

[10] According to the FBI's Research and Technology Program, an advertising ID ("ad ID") is a long, unique, randomized string of digits that is used for advertising and provided by Google Play services.   Users can reset their identifier or opt-out of ads that are interest-based within Google Play, which is tracked by this otherwise anonymous number.   While users can reset their Ad ID, so one user may have several different numbers associated with them, a single ad ID is unique to a user and not common amongst multiple users.   According to Google LLC, they cannot trace a Google Ad ID to specific devices or users because the numbers are anonymous.

29.  According to records provided by TextNow, the 7135 Number (which made Calls 4 and 5) was assigned to a TextNow account with username "nnnx8733" from January 24, 2023 01:38:55 UTC to February 1, 2023 04:34:47 UTC.  The account with username nnnx8733 was registered using email address nnnx8733@gmail.com on October 31, 2022 at 00:32:54 UTC.  The registration IP address was 35.149.22.115.  The name listed on the account was "X nnn." Further, according to the records provided by TextNow, this account has "Google Ad Identification Number" Android OS: ae4ac46f-fd58-441a-a822-cadb9e5e7112.

30.  According to records provided by TextNow, the 4242 Number (which made Call 6) was assigned to a TextNow account with username "lau49305" from December 4, 2022 01:28:06 UTC to March 9, 2023 05:39:01 UTC.  The account with username lau49305 was registered using email address lau49305@gmail.com on December 4, 2022 01:27:48 UTC.  The registration IP address was 35.149.22.120.  The name listed on the account was "Lau."  Further, according to the records provided by TextNow, this account has Google Ad Identification Number Android OS: ae4ac46f-fd58-441a-a822-cadb9e5e7112.

31.  According to records provided by TextNow, the 2609 Number (which made Calls 8, 9 12, and 13) was assigned to a TextNow account with username "kk9044660" from January 3, 2023 02:46:54 UTC to March 11, 2023 04:39:32 UTC.  The account with username kk9044660 was registered using email address kk9044660@gmail.com on October 23, 2022 at 03:21:16 UTC.  The registration IP address was 35.149.22.115.  The name listed on the account was "K kkk." Further, according to the records provided by TextNow, this account

has Google Ad Identification Number Android OS: ae4ac46f-fd58-441a-a822-cadb9e5e7112.

32.   According to records provided by TextNow, the 2504 Number (which made Calls 10 and 11) was assigned to a TextNow account with username "facessmile18" from January 8, 2023 07:57:20 UTC to March 11, 2023 04:38:58 UTC.   The account with username facessmile18 was registered using email address facessmile18@gmail.com on November 11, 2022 at 01:47:55 UTC.   The registration IP address was 97.90.204.37.   The name listed on the account was "Smile Faces." Further, according to the records, this account used IP address 35.149.22.120 (the same IP address that registered the account associated with the 6294 and 4242 Numbers) to login 12 times on February 8, 2023, including at 19:14:53 UTC, approximately 22 seconds before it was used to place Call 10, and at 19:18:05 UTC, approximately 26 seconds before it was used to place Call 11.[11]   The records provided by TextNow did not have a Google Ad Identification Number associated with this account.

33.   According to records provided by TextNow, the 4363 Number (which made Calls 14 and 15) was assigned to a TextNow account with username "jac563671" from February 8, 2023 22:31:26 UTC to March 13, 2023 04:39:27 UTC.   The account with username jac563671 was registered using email address jac563671@gmail.com on November 19, 2022 01:13:21 UTC.   The registration IP address was 97.90.204.37. The name listed on the account was "Jac."   Further, according to the records, this account used IP address 35.149.22.120 (the same IP

---

[11] According to TextNow, they only retain login IP addresses for approximately 11 days.   As such, based on when records were requested, TextNow only provided login IP addresses for the 2504 and 4363 Numbers.

address that registered the account associated with the 7135 Number and logged into the account associated with the 2504 Number) to login on February 9, 2023 at 03:07:46 UTC, approximately two minutes before it was used to place Call 14 and approximately ten minutes before it was used to place Call 15.  This account also has Google Ad Identification Number Android OS: ae4ac46f-fd58-441a-a822-cadb9e5e7112.

34.   In summary, the seven TextNow accounts described above (which made 14 of the 15 threatening calls) have the following common information: (1) five of the seven are associated with the same Google Ad Identification Number; (2) two were registered using IP address 97.20.204.37 (including one of the two not connected to the Google Ad Identification Number in common); (3) two were registered using IP address 35.149.22.120 (including the other of the two not connected to the Google Ad Identification Number in common); and (4) Calls 10, 11, 14 and 15 were made shortly after two of the seven accounts logged in using the 35.149.22.120 address (different accounts from the two that registered using this IP address).  Based on the above, each TextNow account referenced is connected to at least one other by IP address or Google Ad Identification Number.

35.   According to records provided by Charter Communications, Inc., between November 3, 2022 07:20:32 UTC and November 23, 2022 15:02:37 UTC (which includes when the accounts associated with the 2504 and 4363 Numbers were registered), the registered owner of IP address 97.90.204.37 was Raquel Pelayo ("R. Pelayo"), and it was

registered to R. Pelayo and the Target Subject's shared residence at the time.[12]

36. According to records provided by Charter Communications, Inc., between November 22, 2022 19:04:13 UTC and April 14, 2023 04:19:32 UTC (which includes when the accounts associated with the 6294 and 4242 Numbers were registered and when the accounts associated with the 2504 and 4363 Numbers were logged into before makings Calls 10, 11, 14, and 15), the registered owner of IP address 35.149.22.120 was R. Pelayo, and it was registered to R. Pelayo and the Target Subject's shared residence at the time.

37. I contacted the providers of IP addresses 35.149.22.115 and 175.58.29.237, the providers were unable to look-up or determine the subscriber for these IP addresses.

### C. Almost of the Email Addresses Associated with the TextNow Phone Numbers were Accessed using the Mobile Device Associated with the Subject Telephone, and All of Them Were Accessed by a Block of IP Addresses Registered to the Target Subject's Mother

38. Google LLC provided records related to the above-mentioned seven email addresses associated with the seven TextNow accounts. In the provided records, as requested, Google LLC included the information about mobile devices used to access the accounts

---

[12] According to records from Charter Communications, Inc. on June 16, 2023, R. Pelayo's service and billing addresses were apartment 43. According to records from Charter Communications, Inc. on August 23, 2023, R. Pelayo's billing address was recently changed from apartment 43 to apartment 99 within the same apartment complex, but the service address remained apartment 43. However, according to a representative of Charter Communications, Inc. on August 23, 2023, R. Pelayo's service and billing addresses are both now apartment 99. As further described in Section III.E, I believe the Target Subject moved from apartment 43 to apartment 99 in July 2023.

associated with six[13] of the email addresses.  According to these records, all of those six email addresses (and three other email addresses specified in our request, including tengwifi424@gmail.com, which is discussed further in paragraph 47) have been accessed by a device with International Mobile Equipment Identity ("IMEI")[14] 355574111987579.  According to Google, this IMEI is the IMEI of an Android device, which I know to be a type of cellular phone.

39.  According to records provided by the Carrier on April 26, 2023, this IMEI is associated with the **Subject Telephone**.  According to T-Mobile US, Inc. records, on April 26, 2023, this phone number was subscribed to "Dicmar Joaquin," at 991 West Blane Street, Apartment 43, Riverside, California 92507.  The account activation date was April 29, 2022, and the current account status effective date was January 17, 2023.  According to the Carrier's records, on January 22, 2023, the **Subject Telephone** received a single text message from the 6216 Number (the number that placed Call 7 on February 6, 2023, a Telnyx number).

40.  According to records provided by Google LLC on April 25, 2023, email address edwardend91@gmail.com (the email address used to register the TextNow number that made Call 1) was created on November 12, 2018 at 23:03:50 UTC, and is subscribed to "çï."  On

[13] The initial records provided were in response to queries of nine specific email addresses, which included only six of the seven email addresses associated with TextNow accounts that made threatening calls.  Specifically, the query did not include kastip275@gmail.com.  As such, the responsive records did not identify this email as also associated with the IMEI discussed, however, that may be due to the way the records were requested and may not mean that that account was not also accessed by the same IMEI.

[14] Based on my training and experience, I know an IMEI to be unique to a single device.

January 12, 2023 at 05:10:51 UTC, this account was logged into using IP address 2600:6c51:7af0:7800:9de8:1d71:5875:8456.  The last login included in the provided records was on February 27, 2023 at 05:18:08 UTC, using IP address 2603:8000:2d02:376b:211f:965b:bc92:f0bc.

41.  According to records provided by Google LLC on June 2, 2023, email address kastip275@gmail.com (the email address used to register the TextNow number that made Calls 2 and 3) was created on January 23, 2023 at 02:43:03 UTC, and is subscribed to "Kas Tip." The last login included in the provided records was on January 23, 2023 at 08:26:15 UTC, using IP address 2600:6c51:7af0:7800:8c33:207d:a22f:fec0.

42.  According to records provided by Google LLC on April 25, 2023, email address nnnx8733@gmail.com (the email address used to register the TextNow number that made Calls 4 and 5) was created on October 31, 2022 00:32:45 UTC, and is subscribed to "X nnn."  The last login included in the provided records was on February 10, 2023 at 23:00:49 UTC, using IP address 2600:6c51:7af0:7800:a88f:6f6:9ccf:2221.

43.  According to records provided by Google LLC on April 25, 2023, email address lau49305@gmail.com (the email address used to register the TextNow number that made Call 6) was created on December 4, 2022 at 01:27:35 UTC, and is subscribed to "Lau."  On January 17, 2023, this account was logged into using IP address 35.149.22.120.  The last login included in the provided records was on February 10, 2023 at 23:00:54 UTC, using IP address 2600:6c51:7af0:7800:a88f:6f6:9ccf:2221.

44.  According to records provided by Google LLC on April 25, 2023, email address kk9044660@gmail.com (the email address used to register the TextNow number that made Calls 8, 9, 12, and 13) was created on October 23, 2022 at 03:20:43 UTC, and is subscribed to "K kkk."  The last login included in the provided records was on February 10, 2023 at 23:00:59 UTC, using IP address 2600:6c51:7af0:7800:a88f:6f6:9ccf:2221.

45.  According to records provided by Google LLC on April 25, 2023, email address facessmile18@gmail.com (the email address used to register the TextNow number that made Calls 10 and 11) was created on November 11, 2022 at 01:47:05 UTC, and is subscribed to "Smile Faces."  The last login included in the provided records was on February 10, 2023 at 23:01:07 UTC, using IP address 2600:6c51:7af0:7800:a88f:6f6:9ccf:2221.

46.  According to records provided by Google LLC on April 25, 2023, email address jac563671@gmail.com (the email address used to register the TextNow number that made Calls 14 and 15) was created on November 19, 2022 at 01:13:09 UTC, and is subscribed to "Jac." The last login included in the provided records was on February 10, 2023 at 23:01:03 UTC, using IP address 2600:6c51:7af0:7800:a88f:6f6:9ccf:2221.

47.  Another email address associated with IMEI 355574111987579 (which is connected to the **Subject Telephone**) is tengwifi424@gmail.com.  According to records provided by Google LLC on April 25, 2023, email address tengwifi424@gmail.com was created on September 27, 2022 at 22:33:30 UTC, and is subscribed to "Ss Ss." The last login included in the provided records was on January 26,

2023 at 22:58:31 UTC, using IP address

2600:6c51:7af0:7800:8035:8387:8c8f:6347.

48.  Of note, the last login IP address for tengwifi424@gmail.com (IP address ending in -6347) was also used to login to six of the seven email addresses associated with TextNow accounts that made threatening calls on January 26, 2023.  The only email address that did not use IP address ending -6347 to login on January 26, 2023 was kastip275@gmail.com (associated with the 6294 Number that made Calls 2 and 3).  Additionally, the same six of the seven email addresses, as well as tengwifi424@gmail.com, all logged in using IP address 2600:6c51:7af0:7800:9de8:1d71:5875:8456 on January 12, 2023.

49.  As noted in the preceding paragraphs, the email addresses used to register for five TextNow numbers (all except the 0424 and 6294 Numbers)--which placed 11 of the 15 threatening calls--were last accessed using the same IP address, within two days of each other.

50.  According to records provided by TextNow, tengwifi424@gmail.com was used to register for three TextNow accounts, associated with phone numbers 805-534-5609, 909-505-4719, 909-362-8905.  The registration IP address for all three numbers was 35.149.22.115, which was also used to register the 2609 Number (which placed Calls 8, 9, 12, and 13) and the 7135 Number (which placed calls 4 and 5).

51.  All eight of the above detailed google email accounts were logged into using the same IP address block[15] at least once.  The IP

---

[15] According to Charter Communications, Inc., an IP address block is a group of IP addresses which can all be registered to the

26

address block beginning 2600:6c51:7af0:7800- includes IP addresses ending in -2221, -6347, -8456, and -fec0.  These four IP addresses within the block logged into each one of the eight email accounts detailed in this section.

52.  According to records provided by Charter Communications, Inc., between November 22, 2022 19:04 UTC and April 14, 2023 04:19 UTC (which includes when all eight of the email accounts detailed above were logged into at least once), the registered owner of IP addresses ending in -2221, -6347, -8456, and -fec0 (in the 2600:6c51:7af0:7800- "block") was R. Pelayo and they were registered to the residence R. Pelayo shared with the Target Subject during that time period.

53.  According to records provided by Charter Communications, Inc., between May 8, 2021 08:23 UTC to August 16, 2023 02:21 UTC, the registered owner of IP address ending in -f0bc (the IP address that last logged in to edwardend91@gmail.com--the email address used to register the TextNow number that made Call 1) was "Vicente Gonzalez," with service address 2448 Grove Avenue in Corona, California.[16]

---

same account, meaning all IP addresses within that block are registered to the same account.  Further, according to Charter Communications, Inc., all IP addresses beginning with "2600:6c51:7af0:7800" belong to one block and were registered to a single account between November 22, 2022 and April 14, 2023.

[16] As explained in paragraphs 59 and 60, this address is the last address listed on the Target Subject's California driver's license and where his vehicle was last registered.

**D. Two Email Addresses Used to Create the TextNow Accounts that Made Threatening Calls include Google Pay Information Linking a Credit Card Associated with the Subject Telephone**

54. For each of the above-mentioned email addresses, I have reviewed Google Payment Corporation records.  Three of these email addresses (specifically, facessmile18@gmail.com and jac563671@gmail.com, linked to Calls 10, 11, 14, and 15 and tengwifi424@gmail.com) had a linked MasterCard credit card ending in 0442, with expiration 11/2025 in the name of "Eduardo Pelayo Rodriguez."

55. According to records obtained from Evolve Bank and Trust, MasterCard ending in 0442 belongs to the Target Subject, specifically with account holder name of "Eduardo Pelayo Rodriguez," Social Security Number 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, date of birth February 27, 1993 (this is the same date of birth and social security number I identified through California Department of Motor Vehicles ("DMV") records and banking records), with an address of 2448 Grove Ave, in Corona, California, 92882.  The phone number associated with the account is the **Subject Telephone**, which was associated with the IMEI number used to access almost all of the email addresses mentioned above.  The email address associated with the MasterCard account is tengwifi424@gmail.com as described in paragraph 47.

**E. The Target Subject Background**

56. According to utility information provided by Riverside Police Department from a search of the Riverside Public Utilities database, on July 20, 2023, the Target Subject's name was listed on the utilities records for 991 West Blaine Street, Apartment 43, Riverside, California.  When the database was checked again on

28

September 7, 2023, the Target Subject's name was listed on the utilities records for Apartment 99 in the same apartment complex.

57.   According to the property manager, G. Montes, for Park Hill Apartments, which is the apartment complex located at 991 West Blaine Street, the Target Subject[17] moved into apartment 43 in that complex in September 2022 with his mother, R. Pelayo[18], and his stepfather, D. Joaquin[19].  G. Montes provided the FBI copies of three "Residential Application to Rent" forms for apartment 43, dated July 18, 2022, which names the occupants as "Dicmar Leonel Joaquin Cos, Eduardo Vicente Pelayo Rodriguez, and Raquel Pelayo Rodriguez." Each applicant signed their own application.  A lease, also provided by G. Montes, dated September 16, 2022, for apartment 43 from September 16, 2022 through September 15, 2023 lists "Eduardo V Pelayo" and "Raquel Pelayo" as lessees and was signed by both the Target Subject and R. Pelayo.  According to G. Montes, on July 27, 2023, the Target Subject, R. Pelayo, and D. Joaquin moved from apartment 43 to apartment 99.  A lease, also provided by G. Montes, signed July 28, 2023, for apartment 99 from July 28, 2023 through July 27, 2024, lists "Eduardo V Pelayo" and "Raquel Pelayo" as lessees and was signed by both the Target Subject and R. Pelayo.

58.   Based on the above, I believe the Target Subject resided in Apartment 43 and then moved to Apartment 99 with R. Pelayo (his mother) and D. Joaquin (his stepfather and the subscriber of the

---

[17] When shown a picture of the Target Subject, G. Montes could not recall the Target Subject's name but did recall which apartment he resided in.

[18] R. Pelayo was the registered owner of IP address 97.20.204.37 (connected to Calls 10, 11, 14, and 15) as discussed supra Section A.

[19] D. Joaquin is the subscriber for the **Subject Telephone.**

**Subject Telephone**) in July 2023.  However, G. Montes has not seen the Target Subject enter or exit Apartment 99.  Despite surveillance attempts by myself and other law enforcement, we have not been able to see the Target Subject enter or exit any specific apartment.

59.  According to California DMV driver's license records that I reviewed for "Eduardo Vicente Pelayo Rodriguez," the Target Subject's listed address was 191 East Fromer Street in Rialto, California.  This license was issued on October 7, 2022.  According to DMV driver's license records, on October 29, 2020, the Target Subject's listed address was 2448 Grove Avenue in Corona, California (the same address listed on the Target Subject's credit card discussed in paragraph 55 and where the IP address that last logged in to edwardden91@gmail.com was registered).

60.  According to a law enforcement database as of August 7, 2023, the Target Subject has a 2007 Toyota Camry, with California license plate 8JQD675 registered to him at address of 2448 Grove Avenue in Corona, California.  The registration expired June 24, 2023.  On September 14, 2023, I saw that the registration tags on this vehicle's license plate were expired as of June 2023.  As recently as September 19, 2023, I saw this vehicle in the parking lot of the apartment complex where the Target Subject is believed to reside.

### F.   D. Montes Background

61.  Daniel Montes ("D. Montes") is a Riverside, California resident.  According to records maintained by the United States Navy, D. Montes was a Navy reservist from 2013 to the present.  According to D. Montes, he lived with his mother, G. Montes (the

above-mentioned property manager), at 991 West Blaine Street from May 2018 until July 2019.

62.   D. Montes said he did not recognize the Target Subject's name.  When shown a picture of the Target Subject, D. Montes said he couldn't recall where he had seen the person before and thought it looked like an individual named "Gonzalez" that worked at a logistics company.

63.   According to D. Montes, he has never called a suicide prevention or crisis line, nor has he made threatening or prank calls to schools.  When asked if he knew who make want to make "swatting" calls targeting him, he mentioned his ex-wife and ex-girlfriend.  According to FBI Special Agent Thomas Trehus, who has heard D. Montes' voice, based on their review of recordings of Calls 3, 5, 6, 13, 14, and 15 as described supra Section III.A, in his opinion, the caller's voice does not resemble D. Montes' voice when he interviewed him.

64.   According to G. Montes--D. Montes' mother and the property manager at 991 West Blaine Street--she received multiple telephone calls from the 4363 Number (which placed Calls 14 and 15 on February 8, 2023) and another telephone number she could not remember.  The caller sounded female but seemed to be attempting to alter their voice.  The caller spoke in Spanish and said G. Montes's granddaughter had been molested.  G. Montes said she believed the caller was Cassandra Vega ("Vega")[20].  I have reviewed records

---

[20] According to G. Montes, Vega's partner is cousins with the Target Subject.  According to G. Montes, Vega was a prior resident of the apartment complex at 991 West Blaine Street, apartment 115, who left on bad terms in December 2022 after a dispute concerning whether Vega would renew her lease or move out.  G. Montes gave a

provided by TextNow for the 4363 Number, which show 27 calls to G. Montes's office phone number on February 10, 2023, two days after the last threatening call discussed in Section III.A.  I have reviewed records provided by TextNow for the 4242 Number (which placed Call 6 on February 5, 2023), which show seven calls to G. Montes's office phone number between January 27, 2023 and February 1, 2023.  I have reviewed records provided by TextNow for 909-362-8905, which show 14 calls to G. Montes's office phone number between on February 10, 2023, a number associated with tengwifi424@gmail.com.

65.  Simultaneous to this application, I am submitting an application for search warrants pursuant to 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), 2703(c)(1)(A) and 2703(d) for information held by TextNow, Inc. and Google LLC.  This information will likely contain additional dates where determining the Target Subject's location will be relevant to the investigation during the time period when the Target Offenses were being committed.  Locations information for the **Subject Telephone** will assist my investigation into determining the Target Subject's location during the Target Offenses including when the calls were placed or the accounts logged into and other relevant dates and times, which may, among other things, identify unknown others assisting or conspiring with the Target Subject to commit or conceal evidence of the Target Offenses.

66.  I seek prospective information via this application because this information will assist me in gathering evidence in the ongoing investigation I have described above in the following ways:

negative reference about Vega.  Approximately one week after Vega moved out, G. Montes started receiving harassing phone calls.

(1) unknown others may have assisted the Target Subject in the Target Offenses or may be currently assisting in any attempt to obscure the Target Subject's identity or involvement, and determining concert of action and contact between the Target Subject and others, including his regular locations, is of value to my investigation, even after the calls ceased; (2) the information will enable me to identify individuals involved that I have not previously identified; and (6) the information will often identify locations where evidence may be stored, including the digital devices necessary to have carried out the Target Offenses, and where search warrants may be appropriate. Moreover, it will assist in targeting surveillance conducted in this case, and reduce the risk of being detected and revealing the nature or fact of the investigation. People who are involved in criminal activity are often conscious of being followed and keep a close eye out for surveillance units. The chance of being discovered increases with the more surveillance that is done and the closer the surveillance units must get to the target subjects. Use of the prospective location information enables the investigative team to be more focused and judicious in its use of surveillance. It also enables the investigative team to conduct surveillance at a greater distance, because the fear of losing the target is reduced when surveillance is maintained via this information.

## IV. GROUNDS FOR SEALING AND NONDISCLOSURE

67. Based on my training and experience and my investigation of this matter, I believe that reasonable cause exists to seal this application and warrant, as well as the return to the warrant. I also believe that reasonable cause exists, pursuant to 18 U.S.C.

§ 2705(b), to enter an order commanding the Carrier not to notify any person, including the subscriber(s) of the **Subject Telephone**, of the existence of the warrant until further order of the Court, until written notice is provided by the United States Attorney's Office that nondisclosure is no longer required, or until one year from the date the Carrier complies with the warrant or such later date as may be set by the Court upon application for an extension by the United States.  The current investigation set forth above is not public and is ongoing.  The Target Subject is unaware of the investigation.  I know, based on my training and experience, that criminal actors will destroy digital evidence if aware of an investigation, which could include accounts and devices I have not yet identified or gained access to.  In addition, if the Carrier or other person notifies the target of the investigation that a warrant has been issued, the Target subject might further mask their activity and seriously jeopardize the investigation, or attempt to dissuade witnesses from cooperating.  The unique digitally anonymizing actions the Target Subject have already taken amplifies this risk.  Further, given the nature of the Target Offenses, which involve threats of harm to members of the public and specific individuals, should the Target Subject be notified of the investigation it may put members of the public in physical danger.  Accordingly, there is reason to believe that such notification will result in (1) endangering the life or physical safety of an individual; (2) flight from prosecution; (3) destruction of or tampering with evidence; (4) intimidation of potential witnesses; or (5) otherwise seriously jeopardizing the investigation.

V.   CONCLUSION

68.   For all of the above reasons, there is probable cause to believe that the requested Cell-site Information and Phone Location Information related to the **Subject Telephone** will constitute or yield evidence of violations of the Target Offenses committed by the Target Subject.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 28th day of September, 2023.

_____

HONORABLE STEPHANIE S. CHRISTENSEN
UNITED STATES MAGISTRATE JUDGE

E. MARTIN ESTRADA
United States Attorney
CAMERON L. SCHROEDER
Assistant United States Attorney
Chief, National Security Division
JENNA W. LONG (Cal. Bar No. 332192)
Assistant United States Attorney
Terrorism and Export Crimes Section
      1500 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone:  (213) 894-8692
      Facsimile:  (213) 894-2927
      Email: jenna.long@usdoj.gov

Attorneys for Applicant
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| IN RE: CELLULAR TELEPHONE | No. |
|---|---|
| | [PROPOSED] WARRANT |
| | **(UNDER SEAL)** |

Upon application by the United States of America, supported by the law enforcement agent's affidavit, for a warrant relating to the following cellular telephone: 909-346-7297, a cellular telephone issued by T-Mobile US, Inc. (the "Carrier"), with International Mobile Equipment Identity ("IMEI") 355574111987579, International Mobile Subscriber Identity ("IMSI") 310260048504843, subscribed to Dicmar Joaquin at 991 West Blaine Street, Riverside, California 92507 and believed to be used by Eduardo Vicente Pelayo Rodriguez (the "**Subject Telephone**").

THIS COURT FINDS THAT there is probable cause to believe that information related to use of the **Subject Telephone** will constitute or yield evidence of violations of Title 18, United States Code, Sections 875 (Interstate Threats to Injure) and 1038(a) (False

Information and Hoaxes), committed by Eduardo Vicente Pelayo
Rodriguez and potentially unknown others (the "Target Subject").

THIS COURT FURTHER FINDS THAT, pursuant to 18 U.S.C. § 3123,
the attorney for the government has certified that the information
likely to be obtained is relevant to an ongoing criminal
investigation of the Target Subjects being conducted by the Federal
Bureau of Investigation (the "Investigating Agency") for violations
of the Target Offenses.

THIS COURT FURTHER FINDS reasonable cause exists to believe
that providing notification of this warrant at this juncture to the
subscriber(s) of the **Subject Telephone** may have an adverse result.

GOOD CAUSE HAVING BEEN SHOWN, THIS COURT HEREBY ISSUES THIS
WARRANT AND ORDERS THAT:

1.   The Carrier shall provide to the Investigating Agency
(1) all cell-site information, to include call detail, text, and
data information, and (2) all data collected by the Carrier
reflecting the physical location of the **Subject Telephone**, including
E-911 Phase II data, latitude and longitude data, and/or network
timing information, including Sprint's Per Call Measurement Data,
Verizon's Real Time Tool, AT&T's Network Event Location System and
T-Mobile's True Call data, and all other records containing timing
advance measurements and distance-to-tower measurements for all
technologies (CDMA2000, GSM, UMTS, LTE, 5G-NR) (collectively, "Phone
Location Information") for the **Subject Telephone** gathered by the
Carrier from December 4, 2022 through September 28, 2023 (for
historical information), and from September 28, 2023 to November 12,
2023 (for prospective information), along with any other associated

data collected by the Carrier, but not including the contents of any communication.

2.   The Investigating Agency shall make a return of this warrant to the United States Magistrate Judge on duty at the time of the return through a filing with the Clerk's Office within ten calendar days after the disclosure of information ceases.  With respect to historical information, the return shall state the period for which information was provided.  With respect to prospective information, the return shall state the date and time the telephone company began providing information pursuant to this warrant, and the period during which information was provided, including pursuant to any orders permitting continued disclosure.

3.   The disclosure of the requested information shall not only be with respect to the **Subject Telephone**, but also with respect to any changed telephone number(s) assigned to an instrument bearing the same ESN, IMSI, or IMEI (hereinafter "unique identifying number") as the **Subject Telephone**, or any changed unique identifying number subsequently assigned to the same telephone number as the **Subject Telephone**, or any additional changed telephone number(s) and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to the same wireless telephone account number as the **Subject Telephone** within the period of disclosure authorized by the warrant.

4.   The Carrier shall execute the Court's warrant as soon as practicable upon receipt.  If a copy of the warrant is given to the Carrier, the copy may be redacted by law enforcement to exclude the name of the Target Subject and any description of the offenses under investigation.

5.   The Investigating Agency shall reimburse the Carrier for their reasonable expenses directly incurred by the Carrier in providing the requested information and any related technical assistance.

6.   To avoid prejudice to this criminal investigation, the Carrier and their agents and employees shall not disclose or cause a disclosure to any person of this Court's warrant, or the request for information by the Investigating Agency or other law enforcement agencies involved in the investigation, or the existence of this investigation, except as necessary to accomplish the assistance hereby ordered, until further order of the Court, until written notice is provided by the United States Attorney's Office that nondisclosure is no longer required, or until one year from the date the Carrier complies with this warrant or such later date as may be set by the Court upon application for an extension by the United States.  In particular, the Carrier and their agents and employees are ordered not to make any disclosure to the lessees of the telephone or telephone subscribers.  Upon expiration of this order, at least ten business days prior to disclosing the existence of the warrant, the Carrier shall notify the agent identified below of its intent to so notify:

> Special Agent Andrew Schalin
> Federal Bureau of Investigation
> 3480 Vine Street, Suite 200
> Riverside, CA 92507
> 951-248-6563
> apschalin@fbi.gov

7.   The application, this warrant, and the return to the warrant shall remain under seal until otherwise ordered by the Court or until the government determines that these materials are subject

to its discovery obligations in connection with criminal

proceedings, at which time they may be produced to defense counsel.

Law enforcement is permitted to provide a copy of the warrant to the

Carrier.


_____

HONORABLE STEPHANIE S. CHRISTENSEN
UNITED STATES MAGISTRATE JUDGE

DATE/TIME OF ISSUE: _____